Legal Coal Co. v. Rice

*M. Clyde Sheaffer*, for plaintiff.

*Leon Ehrlich*, Deputy Attorney General, for defendants.

KREIDER, J., May 31, 1957.—Plaintiff, Legal Coal Company, filed a petition for an injunction seeking to enjoin the Secretary of the Department of Property and Supplies of the Commonwealth of Pennsylvania from rejecting its bid to supply 50 tons of rice size

anthracite coal. Plaintiff has joined the Auditor General and State Treasurer as parties defendant and seeks to prevent them from approving any contract except to itself for the coal in question.

The principal issue is whether the Secretary of Property and Supplies may require as a specification in an invitation for bids for a contract for coal to be furnished the Commonwealth that the suppliers of coal pay "the prevailing wage rate" and whether the secretary may reject the bid of the lowest bidder which pays the Federal minimum wage rate to its empoyes?

Plaintiff and defendants filed an "Agreed Statement of Facts" consisting of 21 paragraphs and have stipulated that this "shall be considered as the testimony on the final hearing on the petition filed by the Legal Coal Company. . . ."

### Facts

It is stipulated that plaintiff is a Pennsylvania corporation which employes approximately 14 men in the operation of its breaker in Hegins Township, Schuylkill County, that the breaker is equipped with coal cleaning machinery which is used for the preparation of anthracite coal for market. Plaintiff purchases run-of-the-mine coal from independent mines and produces about 550 tons of prepared anthracite coal for market each working day. It is further stipulated that plaintiff company, its employes and the men working at the independent mines from which the Legal Coal Company purchases coal for preparation for market *are not bound by any wage agreements except* that set forth by *the United States Government relating to minimum wages*, that plaintiff carries workmen's compensation insurance and makes the payments required by the Pennsylvania Unemployment Compenastion Act and that plaintiff does not have a fixed wage scale or other benefit earnings and

work conditions to promote health, welfare and safety conditions. It is further stipulated that the clause in the general specifications that "the bidder or his supplier shall not pay less than prevailing wages as listed below limits the number of bidders which can meet the requirements of "Invitation-Bid Proposal Inquiry No. 14-191" which was circulated by the secretary to prospecitve bidders.[1] It is also stipulated

---

1. "GENERAL SPECIFICATIONS:

"Wages, Earnings, Hours Worked, Other Benefits and Working Conditions.

"The minimum wages, hours worked, other benefits earnings, and working conditions which must be maintained and paid by a bidder or his supplier to promote health, welfare and safety conditions shall be those prevailing and in effect in the area and shall include but shall not be limited to workmen's compensation payments, unemployment compensation payments, and social security.

"Decutions [Sic]. The prevailing wages are stated to be those listed below, and shall include not only day rates, but also the value of other benefits and other earnings. The employe of a bidder or a supplier shall not be required to refund directly or indirectly any part of such wages or other benefits or earnings to the bidder or his supplier.

"The bidder and supplier shall certify that they are not receiving or requiring or shall not receive or require directly or indirectly from any employe any refund of such minimum wages or other benefits or earnings.

"The bidder or his supplier shall not pay less than prevailing wages as listed below:

"Prevailing day rates in the various anthracite coal fields— Year 1955:

|  | Northern Field | Eastern Middle Field | Western Middle Field | Southern Field |
|---|---|---|---|---|
| Outside Laborer | 16.20 | 16.17 | 16.16 | 16.18 |
| Inside Laborer | 17.28 | 17.41 | 17.49 | 17.04 |
| Miner at Day Rates | 18.67 | 17.95 | 17.97 | 18.74 |

"Piece rates are substantially higher, and are not to be lower than day rates. The standard work day is seven (7) hours.

that plaintiff, Legal Coal Company, was the low bidder for the anthracite coal in question and that plaintiff's coal meets the chemical analysis and the requirements of the Commonwealth of Pennsylvania.

Plaintiff contends that the Secretary of the Department of Property and Supplies has no authority to fix wages and incorporate a "prevailing wage" provision in specifications of contracts prepared by his department. Plaintiff says that Pennsylvania does not have a statute permitting the fixing of wages by bidders who undertake to supply materials for State contracts. It invokes article III, sec. 12, of the Pennsylvania Constitution of 1874, which provides:

"All stationery, printing, paper and *fuel* used in the legislative and other departments of government shall be furnished, and the printing, binding and distributing of the laws, journals, department reports, and all other printing and binding, and the repairing and furnishing the halls and rooms used for the meetings of the General Assembly and its committees, *shall* be performed under contract to *be given to the lowest responsible bidder* below such maximum price and

"Rate and one-half is paid for hours in excess of seven (7) per day, and in excess of thirty-five (35) hours per week. Double rate is paid for all hours worked in the seventh (7th) consecutive day in the week.

"In the case of a failure to comply with this requirement all sums due the bidder will be withheld until such time as the bidder shall furnish a certificate under oath stating that each employe has been paid the difference between the sums actually paid to such employe and the minimum wages as listed herein.

"Bidder shall furnish a certified copy of agreement as to wages, earnings, hours worked, other benefits and working conditions in effect at the time of the bid opening under which mines of the bidder or supplier are being operated. If there is no such agreement in effect, the bidder shall furnish a statement under oath of wages, earnings, hours worked, other benefits and working conditions in effect at the time of the opening under which the particular mine or mines in question are being operated."

under such *regulations* as shall be prescribed by law; no member or officer of any department of the government shall be in any way interested in such contracts, and all such contracts shall be subject to the approval of the Governor, Auditor General and State Treasurer." (Italics supplied.)

Plaintiff also contends that section 2409 of article XXIV of the Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §639, in paragraph 8 thereof carries the above quoted provision of the Constitution into effect and also requires contracts for materials to be let to the lowest responsible bidder. Section 2409 is, in part, as follows:

"The department *shall,* on the date fixed for opening of bids, at the hour designated in the proposal, open and publish said proposals, and, as soon thereafter as practicable, *award the contracts to the lowest responsible bidder. . . .*" (Italics supplied.)

It may also be noted that section 2403 of article XXIV of The Administrative Code of 1929, supra, as amended, 71 PS §633, provides:

"The Department of Property and Supplies shall have the power, and its duty shall be: . . .

"(b) To enter into contracts for supplying all stationery, printing paper, and *fuel,* used in the legislative and other departments of the Government, and for repairing and furnishing the halls and rooms used for the meetings of the General Assembly and its committees. *All such contracts shall be awarded to the lowest responsible bidder* below such maximum price, and under such regulations as are prescribed by this act, and shall be subject to the approval of the Governor, the Auditor General, and the State Treasurer." (Italics supplied.)

In sum, plaintiff contends that the attempt of the Department of Property and Supplies to stipulate wages and other working conditions, not covered by

the statute, in contracts for materials is illegal and void, that it restricts competitive bidding and prevents the State from purchasing coal from the lowest responsible bidder and violates the common standard provision as set forth in the decisional law of this Commonwealth with respect to bidding on public contracts.

### Defendants' Contentions

Defendants contend that in both the Pennsylvania, Constitution of 1874 and The Administrative Code of 1929, as amended, authority is granted to officials of the Commonwealth to ". . . *prescribe* rules and *regulations* for the submission of bids, awards, forms of contracts and other matter related thereto": Section 2, Act of June 12, 1951, P. L. 516, 71 PS §633(c). Defendants in effect say that because they are given the authority to make regulations under section 12, art. III, of the Constitution and likewise under The Administrative Code, as amended by the Act of 1951, supra, they have adequate authority to promulgate such specifications as they deem proper and just, that the specifications in question were drawn in the exercise of the discretion permitted defendant officials, that the terms and conditions upon which bids were made were deemed adequate to provide full competition and that the standards adopted were those deemed best for the Commonwealth and were not a matter of benefiting a favored class. Defendants further contend that once the specifications had been issued there was no alternative but to take the lowest responsible bid of those who met the qualifications and the specifications in the invitation for bids.

It must be noted, however, that section 2 of the Act of 1951, amending The Administrative Code of 1929, supra, 71 PS §633(c) provides that:

"The Department of Property and Supplies shall have the power, and its duty shall be:

"(c) To enter into contracts with *the lowest responsible bidder* for the purchase of all other furniture, materials or supplies requested by the Legislature, and other departments of the State Government, except as otherwise provided by this act, . . .", and that section 12, art. III, of the Pennsylvania Constitution specifically provides, as above stated, that:

"All stationery, printing, paper and *fuel* used in the legislative and other departments of government shall be furnished and . . . shall be performed under contract to be given to *the lowest responsible bidder.* . . ."

We are unable to agree with defendants that their right to promulgate regulations and specifications in the invitation for bids carries with it the higher right to ignore the Constitutional and statutory mandate that the *bids for materials* shall be awarded to the lowest responsible bidder. And this is true, we believe, despite the provisions of section 522 of The Administrative Code of 1929, as amended by section 1 of the Act of June 21, 1937, P. L. 1865, and as further amended by the Act of May 11, 1949, P. L. 1199, sec. 1, 77 PS §202, which provides:

"Section 522. Wage Specifications in Contracts for Public Works.—The specifications upon which contracts are entered into by the Commonwealth for the construction, alteration, or repair of any public work shall, as far as possible, contain the minimum wage or wages which may be paid by the contractor or his subcontractors for the work performed by laborers and mechanics employed in such public work, and such laborers or mechanics shall be paid not less than such minimum wage or wages, and shall not be required to refund, directly or indirectly, any part of such wage or wages. . . ."

A similar provision in the Act of March 16, 1937, P. L. 98, sec. 1, 43 PS §155, permits, but does not

require, counties, cities, boroughs, towns, townships, school districts or poor districts to insert minimum wage specifications in contracts ". . . for the construction, alteration or repairs of any public work or improvement. . . ." We believe, however, that the minimum wage specifications relate only to the *construction, alteration or repairs of public works* or improvements and not to the furnishing of materials or *fuel* to the Commonwealth. As to the latter type of public contracts defendants have cited no constitutional provision or statute which permits a "prevailing wage" (which we understand is higher in the instant case then the Federal minimum wage) to be inserted as a "specification" in an invitation to bid for materials and fuel. In any event, if this can be done under the Constitution, the General Assembly, not the Secretary of Property and Supplies, should do it. We make no criticism whatsoever of the secretary's action in this matter. We think he acted in the utmost good faith and with the best motives. However, we are bound to declare that in our opinion, he mistakenly exceeded his authority in this case. Consequently, the Secretary of the Department of Property and Supplies should be enjoined from rejecting the bid of plaintiff on the ground that it did not specifically comply with the prevailing wage specification and the Auditor General and State Treasurer and their successors in office should be enjoined from approving any contract for anthracite coal for the Commonwealth of Pennsylvania where the invitation-bid proposal contains such a prevailing wage specification.

Plaintiff also prays that the Secretary of the Department of Property and Supplies be enjoined from awarding any contract for the said 50 tons of rice size anthracite coal to any person other than plaintiff, Legal Coal Company, for the reason that all other bidders are not the lowest bidders and that the Audi-

tor General and State Treasurer be likewise enjoined from approving such contract with any person or corporation other than plaintiff. Under the present state of the record, we cannot order the secretary to award the contract to plaintiff because there is no evidence that plaintiff is the lowest *responsible bidder*. The agreement of facts merely recites that plaintiff is the low bidder. It may be that the parties can establish this fact by stipulation; if not, the chancellor will retain jurisdiction of the complaint and take testimony on this point.

### Conclusions of Law

1. The Secretary of the Department of Property and Supplies was without authority to reject the bid of plaintiff, Legal Coal Company, pursuant to invitation-bid proposal inquiry no. 14-191, dated March 7, 1956, covering 50 tons of rice size anthracite coal on the ground that it did not specifically comply with the department's regulation that "the bidder or his supplier shall not pay less than prevailing wages" as listed in the general specifications.

2. The Secretary of Property and Supplies is without authority to set a wage scale to be paid to employes of suppliers of materials and fuel who offer to furnish the same to the Commonwealth of Pennsylvania.

3. The Secretary of the Department of Property and Supplies has no authority to award a contract for the coal in question to the Stevens Coal Company at its bid of $7.75 per ton.

4. The Auditor General and State Treasurer of Pennsylvania have no authority to approve an award of the contract for the said coal to the Stevens Coal Company.

### Decree Nisi

And now, May 31, 1957, it is ordered, adjudged and decreed that the award by the Secretary of the Depart-

ment of Property and Supplies of the Commonwealth of Pennsylvania of a contract dated March 7, 1956, to the Stevens Coal Company for 50 tons of anthracite coal, be and the same hereby is declared illegal, null and void, and defendants are herewith enjoined and restrained from entering into any contracts on the basis of that award, or from otherwise recognizing or giving any effect thereto, or from paying out any public funds in connection therewith. The court will retain jurisdiction of plaintiff's complaint in equity.